# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DAMON P. STEPP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:13-cv-00683-TWP-MJD |
| | ) | |
| REXNORD INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION FOR LEAVE TO FILE BELATED REQUESTS

This matter is before the Court on Defendant Rexnord Industries, Inc.'s ("Rexnord") Motion for Summary Judgment ([Filing No. 107](#)). After failing to receive an offer of employment from Rexnord, Plaintiff Damon P. Stepp ("Mr. Stepp") filed a charge of race discrimination against Rexnord with the U.S. Equal Employment Opportunity Commission ("EEOC"). The EEOC conducted an investigation, dismissed the charge, and notified Mr. Stepp of his right to sue. Mr. Stepp then initiated this lawsuit. Rexnord moves for summary judgment, asserting that Mr. Stepp cannot show race discrimination in Rexnord's decision not to hire him.

Also before the Court is Mr. Stepp's "Motion to Seek Leave of Court for Filing Belated Request(s)" ([Filing No. 127](#)). For the following reasons, Rexnord's Motion for Summary Judgment is **GRANTED**, and Mr. Stepp's Motion to File "Belated Requests" is **DENIED**.

## I. BACKGROUND

As the summary judgment standard requires, the undisputed facts and disputed evidence are presented in the light reasonably most favorable to Mr. Stepp as the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

Rexnord is a worldwide industrial company that designs and manufactures bearings, couplings, gear drives, and a variety of other products for the automotive, mining, energy, and other industries. In the fall of 2011, Rexnord's Indianapolis facility had approximately 400 employees, of which approximately 280 were hourly workers. Most of these hourly employees worked as computer numerically controlled (CNC) machinist, or in assembly or grinding; while some worked in inspection, maintenance, shipping and receiving, or the tool room.

In the fall of 2011, Rexnord's management decided to increase production of bearings by over thirty percent in its Indianapolis facility. The human resource and other department managers were tasked with determining how to meet these new production goals as quickly as possible. They decided to quickly hire five new employees in the assembly department. Because of its need to quickly hire additional employees, management decided to accept referrals from current employees as well as accept applications from external candidates. Amanda Bright ("Ms. Bright"), a current employee of Rexnord, submitted a referral for Mr. Stepp. Rexnord also received dozens of other referrals for the five assembly positions.

Mr. Stepp graduated from high school and attended Indiana State University but did not graduate. Following high school, he worked as a mover for a moving and storage company and worked for several temporary employment agencies. In 2005, Mr. Stepp was hired by Major Tool & Machine, Inc. ("Major Tool"). His first period of employment with Major Tool ended in 2006 when he had to leave town to help care for his newborn son's health issues. Mr. Stepp began working again at Major Tool in 2007 and was employed there for approximately two years. In 2009 his employment with Major Tool was terminated. Mr. Stepp was told his employment with Major Tool was terminated because someone informed a manager that he was seen drinking alcohol on his lunch break and he had violated the company's drug/alcohol policy. Subsequently,

Mr. Stepp filed a lawsuit alleging his termination was done out of retaliation for complaining about OSHA violations and racial discrimination. The lawsuit was settled.

After being referred by Ms. Bright, Mr. Stepp completed an employment application, which he submitted to Rexnord. On the application, Mr. Stepp indicated that he left his employment with Major Tool in 2009 for a "personal" reason even though he had been terminated. By signing the application, Mr. Stepp "certif[ied] that all information in this Application is correct and that [he had] not omitted any information." He also acknowledged that he "underst[ood] that falsification of any information or omission of any material information, whenever discovered shall be grounds for termination of employment."

Mr. Stepp was interviewed by Ginger Nicholson, one of Rexnord's human resource coordinators, who then forwarded his application materials to the assembly department supervisor for further consideration. The supervisor had some concerns about Mr. Stepp's responses on his application, so Ms. Nicholson called Mr. Stepp to seek clarification.

During the follow-up telephone call with Ms. Nicholson, Mr. Stepp again did not disclose that his employment with Major Tool had been terminated. Mr. Stepp intentionally avoided disclosing to Rexnord why he was no longer employed by Major Tool. After conducting the follow-up call with Mr. Stepp, Ms. Nicholson reported to the assembly department supervisor that she thought Mr. Stepp was not being forthright in his answers about his job history. Because it appeared Mr. Stepp was being evasive about his prior employment, and in light of the large number of other applicants under consideration, Rexnord decided not to offer employment to Mr. Stepp.

At the end of the interview process in the fall of 2011, Rexnord hired five applicants for the assembly position. Rexnord hired Abigail Bell, Paula Collins, Kenneth Mark Hankins II, Frank Kratoska, and DeWayne Thomas. Of these successful applicants, Mr. Thomas, like Mr. Stepp, is

an African American male. Rexnord chose to hire these applicants based on their experience, skills, and qualifications and on a belief that they were self-motivated, detail-oriented, team players, and problem solvers.

Each of the five successful applicants were forthright about their prior work history during their interviews. Mr. Stepp was one of dozens of applicants who were not given job offers in the fall of 2011 for the open assembly positions.

## II. **SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). However, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (internal citations and quotation marks omitted). Finally, "neither the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is

sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (internal citations and quotation marks omitted).

## III. **DISCUSSION**

### A. Procedural and Evidentiary Disputes

The Court first addresses the parties' procedural and evidentiary disputes regarding Rexnord's motion for summary judgment and the related filings.

Rexnord filed its motion for summary judgment on July 11, 2014 ([Filing No. 107](#)). Mr. Stepp is proceeding pro se. In compliance with Local Rule 56-1(k), Rexnord also filed and served a "Notice Regarding Right to Respond to and Submit Evidence in Opposition to Motion for Summary Judgment," so that Mr. Stepp would know of the necessity of responding to Rexnord's motion ([Filing No. 110](#)). Mr. Stepp timely filed his Response Brief and designated evidence on August 11, 2014 ([Filing No. 120](#)).

In its Reply Brief, Rexnord raises a number of defects in Mr. Stepp's Response Brief and designated evidence ([Filing No. 128 at 11](#)).[1] Rexnord begins by pointing out Mr. Stepp's violations of page limitations and formatting requirements. The Court notes that:

> It is well established that courts are required to give liberal construction to pro se pleadings. However, it is also well established that pro se litigants are not excused from compliance with procedural rules. [T]he Supreme Court has never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel[.] Further, as the Supreme Court has noted, in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.

*Loubser v. United States*, 606 F. Supp. 2d 897, 909 (N.D. Ind. 2009) (internal citations and quotation marks omitted). Although Mr. Stepp's Response Brief violates the page limitation, the

---

[1] The Court excuses Mr. Stepp's grammatical errors, spelling errors, and similar "technicalities," each of which has no bearing in deciding Rexnord's summary judgment motion and Mr. Stepp's motion for leave.

line spacing requirement, and the requirement of additional information for oversized briefs as prescribed by Local Rules 5-1(b), 7-1(e)(1), and 7-1(e)(3), the Court will consider Mr. Stepp's Response Brief and the admissible designated evidence that was filed with the Response Brief.

Mr. Stepp filed a separate "Plaintiff's Statement of Material Facts Not in Dispute" as an exhibit of designated evidence to his Response Brief (Exhibit 20) ([Filing No. 120-4](#)). A party's "Statement of Material Facts Not in Dispute" or "Statement of Material Facts in Dispute" should be included in the summary judgment brief, *see* Local Rule 56-1(a) and (b), and is not considered designated evidence. Additionally, Mr. Stepp included in his Response Brief a section titled "Response to Defendant's Statement of Material Facts Not in Dispute." Much of Mr. Stepp's separately filed "statement of material facts" designated as evidence is duplicative of this section of Mr. Stepp's brief. But Mr. Stepp cannot file an exhibit to his brief in order to submit duplicative or additional material that should have been included in his already oversized brief. *See, e.g., Ekanem v. Health and Hospital Corp. of Marion County, Ind.*, 724 F.2d 563, 567 (7th Cir. 1984); *Stevens v. Lifecare Centers of America, Inc.*, 2008 WL 151844, at *2 (S.D. Ind. Jan. 16, 2008). This "creates [an] undue burden to opposing counsel and the Court at the summary judgment stage of litigation." *Stevens*, 2008 WL 151844, at *2. Furthermore, many of the statements in Exhibit 20 are not supported by evidence designated to the Court. Therefore, The Court will not consider Mr. Stepp's Exhibit 20 when deciding the summary judgment motion.

The Court previously denied Mr. Stepp's motion to file belated designated evidence ([Filing No. 122](#)), which was filed separately after Mr. Stepp had already filed his Response Brief and designated evidence. (*See* [Filing No. 148](#).) Because the Court previously denied Mr. Stepp's motion to file belated designated evidence, the Court will not consider Mr. Stepp's untimely designated evidence, listed as Exhibits 4–14, for purposes of this summary judgment motion.

Mr. Stepp asserts that Rexnord's Reply Brief was untimely. Mr. Stepp's Response Brief was served on Monday, August 11, 2014, and Rexnord's Reply Brief was filed on August 27. Mr. Stepp did not account for Rule 6(d), which provided Rexnord with three additional days to file its Reply Brief following Mr. Stepp's service by mail. Thus, Rexnord's Reply Brief was timely filed and will be considered.

The Court's local rules allow surreplies in limited circumstances:

> A party opposing a summary judgment motion may file a surreply brief only if the movant cites new evidence in the reply or objects to the admissibility of the evidence cited in the response. The surreply must be filed within 7 days after the movant serves the reply *and must be limited to the new evidence and objections*.

Local Rule 56-1(d) (emphasis added). In its Reply Brief, Rexnord designated additional, new evidence and objected to the admissibility of Mr. Stepp's evidence. Thus, the Court will consider Mr. Stepp's surreply, but only to the extent the matters are limited to the new evidence and objections raised in Rexnord's Reply Brief.

Each party asserts that the other party has designated evidence that is hearsay, not authenticated, irrelevant or immaterial, or otherwise inadmissible. Where "none of the exhibits are supported by affidavit or otherwise authenticated," they are "inadmissible and may not be considered on summary judgment." *Cohen v. Ind. State Dep't of Health*, 2001 U.S. Dist. LEXIS 6778, at *10 (S.D. Ind. Mar. 28, 2001) (citing *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985); Fed. R. Civ. P. 56; Fed. R. Evid. 801; Fed. R. Evid. 901). Additionally, "hearsay [] is inadmissible on summary judgment." *Id.* at *11. When considering a motion for summary judgment, the Court considers only admissible evidence. *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). "In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. . . . Fact disputes that are irrelevant to the legal question will not be considered." *Estate of Williams v. Ind. State Police*, 2014 U.S. Dist.

LEXIS 80648, at *5 (S.D. Ind. June 13, 2014). Further, "the Court is perfectly well-equipped to determine which facts and arguments . . . are, or are not, material to the dispute." *Allman v. Smith*, 6 F. Supp. 3d 889, 897 (S.D. Ind. 2014). The Court has reviewed the designated evidence and relies on only the timely designated evidence that is admissible and material in deciding Rexnord's motion.

As stated earlier, the Court views the designated evidence in the light most favorable to Mr. Stepp, as the nonmoving party, and draws all reasonable inferences in his favor. *Bright v. CCA*, 2013 WL 6047505, at *3 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* (internal citation and quotation marks omitted).

**B.  Mr. Stepp's "Motion to Seek Leave of Court for Filing Belated Request(s)"**

After filing his response to Rexnord's summary judgment motion, Mr. Stepp filed a "Motion to Seek Leave of Court for Filing Belated Request(s)" on August 25, 2014 ([Filing No. 127](#)). Rexnord filed a response in opposition to Mr. Stepp's motion on September 11, 2014 ([Filing No. 133](#)).

As the Court has noted, "courts are required to give liberal construction to pro se pleadings . . . . However, it is also well established that pro se litigants are not excused from compliance with procedural rules." *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008).

In his motion, Mr. Stepp asks the Court to "allow [him] to supplement [his] summary judgment response with a statement of claim" and "accept and incorporate into [his] summary judgment motion . . . '[his] statement of claim.'" ([Filing No. 127 at 1](#), 2.) It is unclear whether Mr.

Stepp is requesting leave to amend his complaint to add claims under 42 U.S.C. §§ 1981 and 1983 or requesting leave to add argument to his summary judgment response brief.

Mr. Stepp's motion for leave discusses a "statement of claim" under two statutes and discusses liberally construing *pro se* complaints filed on "standard forms." His motion also addresses dismissing complaints pursuant to Federal Rule of Civil Procedure 12(b). Mr. Stepp subsequently filed a surreply brief to provide additional summary judgment argument (Filing No. 130). Considering these facts, it appears that Mr. Stepp's motion for leave (Filing No. 127) is a motion to amend his complaint.

The Court's Case Management Plan ("CMP") was entered on September 25, 2013 (Filing No. 29). The CMP required the parties to amend their pleadings on or before November 25, 2013. Federal Rule of Civil Procedure 6(b)(1) allows the Court to enlarge filing and other deadlines for "good cause." When a motion for time is filed after the deadline already has passed, the moving party must show that he "failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Additionally, Federal Rule of Civil Procedure 15(a)(2) allows amendments to pleadings only with the opposing party's written consent or by leave of court.

The "'good cause' standard primarily considers the diligence of the party seeking amendment." *Trustmark Ins. Co. v. General & Cologne Life Re of Am.*, 424 F.3d 542, 553 (7th Cir. 2005). "[I]n order to demonstrate 'good cause' a party must show that despite their diligence the time table could not have reasonably been met." *Tschantz v. McCann*, 1995 U.S. Dist. LEXIS 8654, at *9 (N.D. Ind. Mar. 28, 1995). On the other hand, "[n]eglect is excusable (though not justifiable--'neglect' implies lack of justification) if there is a reason, which needn't be a compelling reason, to overlook it. A common reason is that the neglect didn't harm anyone, but it will not suffice if no excuse at all is offered or if the excuse is so threadbare as to make the neglect

inexplicable." *United States v. McLaughlin*, 470 F.3d 698, 700–01 (7th Cir. 2006) (internal citations omitted).

Mr. Stepp has not shown good cause or offered a reason for his neglect in failing to amend his complaint before the expiration of the deadline. As the sole basis for this motion, Mr. Stepp asserts that he needed additional time to file his summary judgment response, but that filing deadline was many months after the deadline to amend his complaint, and Mr. Stepp actually did timely file his summary judgment response. Thus, there is no basis to grant Mr. Stepp leave to file these "belated requests." Rexnord would be prejudiced by the expansion of Mr. Stepp's claims if leave were granted at this late stage of the litigation; discovery closed on April 1, 2014, summary judgment has been fully briefed on Mr. Stepp's claim, and trial is scheduled to begin in four months. Therefore, the Court **DENIES** Mr. Stepp's "Motion to Seek Leave of Court for Filing Belated Request(s)" ([Filing No. 127](Filing No. 127)).

## C. Mr. Stepp's Discrimination Claim

It is well-established that a plaintiff may show race discrimination through direct evidence or, as an alternative, indirectly through the burden-shifting mechanism established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[2] *See Stewart v. Henderson*, 207 F.3d 374, 376 (7th Cir. 2000). Under the direct method, a plaintiff may proffer direct or circumstantial evidence to prove discrimination. Direct evidence "requires an admission of discriminatory intent." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). A plaintiff may also prevail under the direct method by constructing a "convincing mosaic" of circumstantial evidence that "allows a

---

[2] The Seventh Circuit Court of Appeals has suggested moving away from the direct/indirect paradigm and using "a simple analysis of whether a reasonable jury could infer prohibited discrimination and an adverse employment action based on that discrimination." *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014) (internal citation and quotation marks omitted). The Seventh Circuit explained, however, that "[w]hile this approach is being considered, the Court has continued to look at the factors embodied in the traditional tests to determine whether plaintiff has succeeded in creating a genuine issue of material fact." *Id.*

10

jury to infer intentional discrimination by the decision maker." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004) (internal citation and quotation marks omitted). "That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Id*. (internal citation and quotation marks omitted).

Alternatively, a plaintiff can use the indirect method of proof to show race discrimination. First, the plaintiff must establish a *prima facie* case of discrimination based on race. If he does so, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the adverse action. Then the plaintiff must show the stated reason is pretextual. *See Stewart*, 207 F.3d at 376. The plaintiff establishes a *prima facie* case of race discrimination by presenting evidence that would allow a reasonable jury to find that: (1) he is a member of the protected class; (2) he applied for and was qualified for the position; (3) he was rejected for the position sought; and (4) the position was given to an individual outside of the protected class who was either similarly qualified or less qualified than the plaintiff. *Ripberger v. Corizon, Inc.*, 2013 U.S. Dist. LEXIS 54653, at *14 (S.D. Ind. Apr. 17, 2013).

### 1. Direct Method

Mr. Stepp asserts that he can show Rexnord's decision not to offer him employment was racially discriminatory using both the direct method and indirect method of proof. Under the direct method, Mr. Stepp has not designated any evidence of an admission of discriminatory intent, so he must construct a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by Rexnord.

Mr. Stepp alleges that Michael Shadoan ("Mr. Shadoan"), one of Rexnord's managers, made a comment about a hairstyle around the time that Mr. Stepp was not offered employment. Specifically, a week or so after his interview, as Ms. Bright was walking through the front office

11

she overheard Mr. Shadoan state that "he just couldn't get past the hair." (Filing No. 128-2 at EFC p. 15-16). The evidence does not show that the comment was made in reference to Mr. Stepp. Nor does it show that the comment was made in reference to a particular hairstyle (Mr. Stepp wore his hair in dreadlocks). Additionally, the evidence does not provide the context in which the comment was made and to whom the comment was made. Even assuming the comment was made with respect to Mr. Stepp, this singular comment about an unidentified hairstyle does not support an inference that Rexnord discriminated against Mr. Stepp based on his race when it did not offer him employment.

Mr. Stepp also suggests that after he brought his discrimination claim against Rexnord, Rexnord altered and manipulated its hiring data provided to the EEOC by replacing a Caucasian individual with an African American male among the individuals that Rexnord hired. Mr. Stepp's allegation is meritless. The designated evidence shows that Rexnord consistently, from the beginning, has submitted accurate hiring data to the EEOC and to this Court, which includes data regarding DeWayne Thomas, an African American male, who was hired during the time period when Mr. Stepp was not offered employment. Mr. Stepp's inaccurate allegation cannot support an inference that Rexnord discriminated against him based on his race when it did not offer him employment.

Mr. Stepp offers no other evidence or argument to directly support his discrimination claim. For the aforementioned reasons Mr. Stepp has not constructed a "convincing mosaic" of circumstantial evidence that would allow a jury to infer intentional discrimination by Rexnord, and thus, he cannot support his race discrimination claim using the direct method.

**2. Indirect Method**

Mr. Stepp relies on the hairstyle comment and Rexnord's allegedly altered and manipulated hiring data to support his discrimination claim indirectly through the burden-shifting mechanism established in *McDonnell Douglas*. He also asserts that Rexnord altered his employment application materials. Importantly, these alterations to the application materials are handwritten notes of the job interviewer. The employment decision was not based on the handwritten notes of the job interviewer. Instead, the designated evidence shows that Rexnord's decision not to hire Mr. Stepp was based on the misleading information that Mr. Stepp wrote on his application materials and his "cagey" responses to follow-up interview questions.

Without addressing whether Mr. Stepp has established a *prima facie* case of race discrimination, the Court determines that Mr. Stepp's claim also fails as a matter of law under the indirect method of proof because Rexnord presented a legitimate, non-discriminatory reason for not hiring Mr. Stepp, and Mr. Stepp failed to present any evidence to show Rexnord's reason was pretextual.

A plaintiff may "prove pretext through indirect evidence, which can be accomplished by establishing that the reasons given by the employer are factually baseless, were not the actual motivation for the decision, or were insufficient to motivate the decision." *Stewart*, 207 F.3d at 376. "The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered. We do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision. Our only concern is whether the legitimate reason provided by the employer is in fact the true one." *Id.* at 378 (internal citations omitted).

Rexnord explained its legitimate, non-discriminatory reason for not hiring Mr. Stepp and designated evidence to support its reason. Rexnord did not hire Mr. Stepp because he evasively

13

listed on his employment application that he left his prior employment with Major Tool for a "personal" reason when in reality he had been fired. When Rexnord conducted an informal follow-up interview with Mr. Stepp about his previous employment and education, he was not straight forward in responding to the questions. He later admitted in his deposition that he "stretched the truth" and evaded responding to Rexnord's questions because he did not want to divulge the circumstances of his prior employment. Because of Mr. Stepp's evasiveness and the large number of other applicants Rexnord was considering for its open positions, Rexnord decided to pursue and hire other applicants who were not misleading in their responses and who were qualified for the positions. This is a legitimate and non-discriminatory basis for not offering employment to an applicant. Thus, to avoid summary judgment, Mr. Stepp must establish that Rexnord's proffered reason is pretextual.

To establish pretext, Mr. Stepp must show the reason given by Rexnord is factually baseless, was not the actual motivation for the decision, or was insufficient to motivate the decision. Mr. Stepp simply failed to meet this burden. He did not designate evidence that raises a factual dispute regarding Rexnord's legitimate, non-discriminatory reason for not hiring him.

The facts in evidence support Rexnord's proffered reason as the actual reason for not hiring Mr. Stepp. Indeed, Mr. Stepp admitted that he was not forthright in responding to Rexnord's questions and states that he tried to keep the circumstances of his employment with Major Tool confidential because of a non-disclosure stipulation contained within a settlement agreement that he signed with Major Tool. Mr. Stepp did not designate any evidence showing that the applicants Rexnord chose to hire also were misleading or evasive in responding to Rexnord's questions, which would suggest that this wasn't the actual reason for Rexnord's decision. Rexnord's decision not to spend more time and effort on one applicant who was evasive when it had numerous other

forthright applicants it could consider for employment was rational and reasonable. That an applicant was not forthright in responding to application or interview questions is a sufficient reason not to offer employment. Mr. Stepp has designated no evidence to suggest otherwise.

Because Mr. Stepp failed to establish that Rexnord's legitimate, non-discriminatory reason for not hiring him was pretextual, as a matter of law, he cannot support his discrimination claim by the indirect, burden-shifting method established in *McDonnell Douglas*.

## IV. <u>CONCLUSION</u>

Mr. Stepp failed to designate evidence showing that Rexnord's decision not to offer him employment was based on racial discrimination. Rexnord showed that its decision not to hire Mr. Stepp was based on a legitimate, non-discriminatory reason. Mr. Stepp failed to offer any evidence that Rexnord's reason was pretextual. As such, summary judgment is appropriate as a matter of law. Rexnord's Motion for Summary Judgment ([Filing No. 107](#)) is **GRANTED**, and Mr. Stepp's claim is **DISMISSED**. Additionally, Mr. Stepp's "Motion to Seek Leave of Court for Filing Belated Request(s)" ([Filing No. 127](#)) is **DENIED**.

**SO ORDERED.**

Date: 12/9/2014

*[Signature]*

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

Damon P. Stepp
8659 Rockville Road
Indianapolis, IN 46234

Charles B. Baldwin
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
charles.baldwin@odnss.com

Christopher C. Murray
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
christopher.murray@ogletreedeakins.com

Michelle R. Maslowski
OGLETREE, DEAKINS, NASH, SMOAK & STEWART
michelle.maslowski@ogletreedeakins.com